### Baltimore & O. S.-W. Ry. Co. v. Philip Keck.

1. FARM CROSSINGS—*Duty of Railroad Companies to Keep in Repair*—Although the law does not in express terms require a railroad company to keep its farm crossings in repair, after once having built them, this duty may be fairly implied from sections three and four of the act " in relation to fencing and operating railroads," in force July 1, 1874

(Hurd's R. S., Chap. 114), providing that the owner or occupant of the land upon which the crossing is situated, on giving ten days' notice, may, on default of the company, repair it himself and recover double the value of such repairs, with interest at one per cent per month, as damages.

2. SAME—*Owners of Farms With Crossings Not Mere Licensees of the Railroad.*—In an action for injuries at a farm crossing, an instruction predicated upon the view that the owner of the farm and his children are merely licensees of the railroad company in the use of the crossing, and that it owed them no duty to keep the crossing in a reasonably safe condition, is properly refused.

3. INSTRUCTIONS—*Exercise of Ordinary Care by Children.*—In an action by the father of a boy, thirteen years of age, injured at a farm crossing, an instruction announcing as a rule of law that the plaintiff is not entitled to recover, unless the evidence shows that the boy was in the exercise of ordinary care for his own safety, but omitting all reference to the age of the boy, is misleading and properly refused.

4. DAMAGES—*In Suits for Loss of Services of Children.*—In an action by a father to recover for the loss of the services of a son, injured by the negligence of a railroad company in failing to maintain a farm crossing in a reasonably safe condition, the plaintiff is entitled to recover compensation only for the loss he has sustained on account of the negligent act of the company in injuring the boy, but nothing can be recovered on account of the pain and suffering of the son, or as exemplary damages.

5. SAME—*When $2,000 is Excessive.*—A boy between thirteen and fourteen years of age was injured at a private farm crossing, so as to render the amputation of his leg necessary; in an action by his father to recover for the loss of his services, a judgment against the railroad company for $2,000 is excessive.

**Action**, to recover for the loss of services, etc.—Appeal from the Circuit Court of St. Clair County; the Hon. MARTIN W. SCHAEFER, Judge, presiding. Heard in this court at the February term, 1899. Reversed and remanded. Opinion filed September 4, 1899. Rehearing denied February term, 1900.

**Statement.**—Appellant's railroad runs through the farm on which appellee resides, and cuts off his means of getting to the public highway leading to the school house, in the school district in which the farm is situated, except by a lane leading from his house to the railroad, and a private farm crossing, constructed by the railway company across its track and right of way, for the accommodation of the occupants of the farm in getting to the highway.

On the morning of October 29, 1897, two of appellee's children started for school, and on arriving at the crossing, one of them, a lad about thirteen years of age, attempted to cross the track while appellant's train was about eighty rods distant, coming from the west; and in the attempt the boy's foot was caught in an opening between a plank of the crossing and the inside of the north rail, and being unable to extricate himself, he leaned over from the rail, and the train ran over and crushed his leg, so that it became necessary to amputate it.

This suit was brought by the father of the boy to recover for the loss of services, as well as for necessary care and medical attendance of the boy, alleged to have been caused by the negligence of appellant in not maintaining the farm crossing in a reasonably safe condition to pass over, and also for gross negligence of the servants of appellant in not stopping the train before reaching the boy. Plaintiff recovered a judgment against appellant for $2,000 damages, and the railway company has appealed.

HAMILL & LESTER and KRAMER, CREIGHTON & SHAEFFER and SILAS COOK, attorneys for appellant.

ROPIEQUET, PERRIN & BAKER, attorneys for appellees; B. H. CANBY, of counsel.

MR. JUSTICE BIGELOW delivered the opinion of the court.

It is urged by counsel for appellant, as a reason why the judgment should be reversed, that the court erred in refusing to give appellant's instruction directing the jury to find for the defendant.

The uncontradicted evidence shows that at the time the boy was injured he was between thirteen and fourteen years of age; that the track was straight and there was nothing to obstruct the view for a distance of eighty rods west of the crossing, and that the train was running at a speed of from forty to forty-five miles an hour.

It is insisted by counsel for appellant that appellee and his

boy were only licensees of appellant as to the right to use the crossing, and this seems to constitute the basis on which the instruction was founded.   If the claim that appellant owed no duty to the occupants of the farm to keep the crossing in repair and in a reasonably safe condition for them to cross, is incorrect, then it is clear, if the crossing was out of repair and in an unsafe condition, and appellant knew it, or, under the circumstances, ought to have known it, the instruction was properly refused.

By a law entitled, "An act in relation to fencing and operating railroads," in force July 1, 1874, railroad companies are required to fence their roads after they have been opened and in use for six months, and to thereafter maintain the fences, "with gates or bars at the farm crossings of such railroad, which farm crossings shall be constructed by such corporation when and where the same may become necessary, for the use of the proprietors of the land adjoining such railroad."  (See Hurd's Revised Statutes of 1897, Chap. 114, Sec. 1.)

Although the law does not, in express terms, require a railroad company to maintain its farm crossings in repair, after once having been built, nevertheless this duty may be fairly implied, as will be seen by sections three and four of the act, which provide that the owner or occupant of the land, on giving the company ten days' notice to repair a crossing, may, on default by the company, repair it himself, and recover from the company double the value of the repairs with interest at one per cent. per month as damages.   Certainly the legislature would never have given the owner or occupant of lands through which a railroad runs, the right to recover from the railroad company a penalty for the nonperformance of an act which it was under no legal obligation to perform.

The contention, then, that the construction and use of the crossing was a gratuity on the part of the railroad company, and that appellee and the members of his family were mere licensees, to whom the company owed no duty except to refrain from injuring them through its gross or

willful negligence, has no foundation in reason or law. A far different question would have been presented had appellee and his son not resided on the farm, but had been strangers to it, in which case the authorities cited by appellant's counsel in support of their contention might have been applicable, but which, as the case is, can not be held authority for our guidance.

What, then, was the condition of the crossing at the time and before the accident happened? The most of the evidence—in fact, nearly all of it—on the subject, is that the opening between the plank and the north rail of the track was at least three and one-half inches in width, and some of the witnesses placed it at four inches. Appellant's witness, Phillips, who had been its supervisor of track for years, testified that the proper distance between the edge of the plank and the upper edge of the rail of a road crossing is two and one-half inches, and yet he testified that the opening between the plank on the south side of the north rail and the rail was three and one-half inches at the top of the plank. If, then, the regulation distance between the edge of the plank and the edge of the rail is two and one-half inches, it would seem that, to allow the opening to become increased an inch further, and to remain so for a long time, when the company must have known that appellee and his family were in the constant habit of using, and in fact were compelled to use the crossing, would, we think, justify a jury in finding defendant guilty of culpable negligence.

In the case of E. J. & E. Ry. Co. v. Raymond, 148 Ill. 241, the Supreme Court said:

"It may also be observed that the mere fact that the plaintiff, in attempting to pass over the crossing, caught her foot in the opening in such a manner as to be unable to extricate it, is of itself some evidence that the opening was dangerous."

The opening between the plank and the rail, in that case, was from two and one-fourth to two and three-fourths inches. It was a question of fact for the jury to determine whether the crossing was in a reasonably safe condition for

travel.  With the evidence of its condition before the jury, and with further evidence that it had been in its present condition a long time before the accident occurred, the court committed no error in refusing to give the instruction.

It is further insisted by counsel for appellant that the court erred in refusing to give appellant's instructions numbered 31, 32, 33, 34, 35 and 36, and each of them.  All of them except No. 34 were predicated upon the view that appellee and his son were merely licensees of the railroad company in the use of the crossing, and that it owed them no duty to maintain the crossing in repair and in a reasonably safe condition to be used; hence it follows from what has already been said, that all of the instructions except No. 34, announced an incorrect rule of law, and were properly refused.

Instruction No. 34 announced as a rule of law that the plaintiff was not entitled to recover, unless the evidence showed that the boy was in the exercise of ordinary care for his own safety, but omitted any reference to the age of the boy, and for this reason it was at least misleading, and hence was properly refused.

Besides the correct rule had already been given in other instructions asked by appellant.

Exceptions were taken to the ruling of the court in the admission and exclusion of evidence, and error has been assigned on the rulings.  We do not regard the matter of sufficient importance to require a reversal of the judgment if the exceptions were well taken.

Error is assigned on the overruling of defendant's motion for a new trial.  One of the primary grounds for the motion was, that the amount of damages found by the jury was unwarranted by the evidence.

Counsel for appellee in their argument seem to assume that a jury, in a case of this character, may give to the plaintiff such an amount of damages as they please, whether there is any evidence to sustain their verdict or not.  This is a mistaken view of the law.  What the plaintiff was

entitled to recover was compensation only for the loss he had sustained on account of the negligent act of the railroad company in injuring his boy. He was entitled to nothing on account of the pain and suffering of his son, or as exemplary damages. Such damages could only be recovered in a suit by the boy. For the medical bill and for necessary care in nursing the boy until his recovery, even though such bills had not been actually paid, he was entitled to recover, because it was his legal duty to care for his boy. In addition he was entitled to recover the present value of such services of the boy until he became of age, as, by the injury, he had been rendered incapable of performing. The rule of damages for the loss of service of a child is the same as for loss of service of a servant, and is not the same as it would have been had the injury resulted in the death of the boy, and suit had been brought by his administrator under the statute, for the benefit of the next of kin. There is no evidence in the record showing the earning capacity of the boy, and nothing that we can discover to warrant the jury in finding such an amount of damages as they did. True, the jury saw the boy, but that was not enough. In all probability if the boy had not been injured he would have gone to school for several years to come and could scarcely have been of much value to his father in a pecuniary way during that time.

We are of opinion that the damages are excessive and that the court erred in overruling defendant's motion for a new trial. For that error the judgment is reversed and the cause remanded.